622-08/MEU
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
Dampskibsselskabet Norden AS
80 Pine Street
New York, NY  10005
(212) 425-1900
(212) 425-1901 fax

Michael E. Unger
Lawrence J. Kahn
Eric J. Matheson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PANAMAX BULK AS,

                     Plaintiff,

    -against-

DAMPSKIBSSELSKABET NORDEN AS,

                   Defendant.
-----------------------------------------------------------x

**08 CIV 8601 (JSR)**

**UNGER AFFIRMATION IN SUPPORT OF MOTION FOR JUDGMENT ON COUNTERCLAIM**

MICHAEL E. UNGER affirms the following under penalty of perjury:

1.     I am admitted to the bar of this Court and am a member of the law firm of Freehill Hogan & Mahar, LLP, attorneys for Defendant Dampskibsselskabet Norden AS ("NORDEN") and I make this affirmation in support of NORDEN's motion for Judgment on its Counterclaim.

2.     Insofar as the contents of this declaration are within my own knowledge, they are true.  Insofar as the contents of this declaration are not within my own direct knowledge, they are true to the best of my information and belief.

3.     Plaintiff Panamax Bulk AS ("PANAMAX") brought this action in order to obtain security via Rule B from NORDEN for claims PANAMAX was pursuing in London arbitrations

1

(which arbitrations were subsequently consolidated) arising out of purported breaches of maritime contracts of affreightment.

4.      The contracts contained mandatory and binding clauses requiring the arbitration of all disputes at London.  True copies of the contracts containing the agreement to arbitrate are annexed as Ex.'s A, B and C to the accompanying Griffiths Declaration.

5.      PANAMAX commenced the arbitrations against NORDEN pursuant to such arbitration clauses, and NORDEN asserted counterclaims for overpayment with respect to the same contracts at issue.

6.      NORDEN filed and served its Answer to the Complaint and Counterclaim on November 6, 2008.  The Counterclaim sought, *inter alia*, recognition and confirmation of any arbitral award issued in favor of NORDEN and against PANAMAX as a Judgment of this Court. A copy of the Answer and Counterclaim is attached hereto as Ex. A.

7.      PANAMAX never Answered NORDEN's Counterclaim, nor did it seek to challenge the Counterclaim by motion, and the time within which to do so has run.  PANAMAX never sought additional time to answer, respond, or otherwise move with respect to the Counterclaim and no grant of additional time was ever given to PANAMAX.  The Clerk issued a Certificate of Default noting PANAMAX's default in failing to timely respond to NORDEN's Counterclaim, a true copy of which is annexed hereto as Ex. B.

8.      PANAMAX was represented by counsel in the London arbitration and fully participated in those proceedings.  Ultimately, the London arbitral panel issued Final Awards in favor of NORDEN and against PANAMAX, awarding NORDEN $1,366,566 plus interest as against PANAMAX.  True copies of the Arbitral Awards are annexed as Ex. D to the accompanying Griffiths Declaration.

350599.1

9.      NORDEN demanded payment of the award from PANAMAX, but PANAMAX

has refused or otherwise failed to make any payment.

Dated: New York, New York
        April 30, 2010

_____
                    Michael E. Unger

# Exhibit A

*Unger Affirmation*

622-08/MEU
FREEHILL HOGAN & MAHAR LLP
Counsel for Defendant
DAMPSKIBSSELSKABET NORDEN AS
80 Pine Street
New York, New York 10005
Tel: (212) 425-1900
Fax: (212) 425-1901
Michael E. Unger, Esq. (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PANAMAX BULK AS,                                      08 Civ. 8601 (JSR)

                    Plaintiffs,

                                                     **VERIFIED ANSWER**

          -against-

DAMPSKIBSSELSKABET NORDEN AS,

                    Defendants.
-------------------------------------------------------------------X

Defendant DAMPSKIBSSELSKABET NORDEN AS (hereinafter "NORDEN") through

its attorneys Freehill, Hogan & Mahar, LLP, responds, upon information and belief, to the

Verified Complaint of Plaintiff PANAMAX BULK AS (hereinafter "PANAMAX") as follows:

1.      DENIES knowledge or information sufficient to form a belief as to the allegations

contained in Paragraph 1 of the Verified Complaint.

2.      DENIES knowledge or information sufficient to form a belief as to the allegations

contained in Paragraph 2 of the Verified Complaint.

3.      ADMITS the allegations contained in Paragraph 3 of the Verified Complaint.

4.      ADMITS that Plaintiff was the broker for three Contracts of Affreightment

(hereinafter the "COAs") between DEFENDANT, as vessel owner or disponent (time chartered)

owner, and non-party RTI, Ltd. (hereinafter "RTI") as vessel charterer, and that by way of a

telefax from NORDEN's solicitors dated September 5, 2008 Defendant denied that further

NYDOCS1/316199.1

commissions were due to Plaintiff, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 4 of the Verified Complaint.

**Weipa/Porto Vesme COA**

5.     ADMITS that the Defendant entered into a marine Contract of Affreightment with non-party RTI (the "Weipa/Porto Vesme COA"), but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 5 of the Verified Complaint.

6.     DENIES each and every allegation contained in Paragraph 6 of the Verified Complaint.

7.     DENIES each and every allegation contained in Paragraph 7 of the Verified Complaint.

8.     ADMITS that the Weipa/Porto Vesme COA was for 43 cargoes of bulk bauxite from Weipa to Porto Vesme, each cargo to be 60,000 mt 10% more or less in owners option, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 8 of the Verified Complaint.

9.     ADMITS that the first seven (7) shipments under the Weipa/Porto Vesme COA were duly performed and Defendant paid commissions to Plaintiff totaling $1,063,781, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 9 of the Verified Complaint.

10.     ADMITS that on or about February 23, 2008, Defendant and RTI terminated the November 30, 2007 COA by mutual consent, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 10 of the Verified Complaint.

11.     DENIES each and every allegation contained in Paragraph 11 of the Verified Complaint.

12.     ADMITS that Plaintiff has demanded Defendant pay further commissions under the Weipa/Porto Vesme COA, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 12 of the Verified Complaint.

13.     ADMITS that Defendant refused to pay further commissions to Plaintiff under the Weipa/Porto Vesme COA because no further sums are due, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 13 of the Verified Complaint.

14.     DENIES each and every allegation contained in Paragraph 14 of the Verified Complaint.

**Trombetas/Aughinish COA**

15.     ADMITS that the Defendant also entered into a marine Contract of Affreightment with non-party RTI (the Trombetas/Aughinish COA"), but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 15 of the Verified Complaint.

16.     DENIES each and every allegation contained in Paragraph 16 of the Verified Complaint.

17.     ADMITS that NORDEN and RTI agreed that 1,340,000 mt would be shipped over the course of the COA at an agreed freight rate, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 17 of the Verified Complaint.

18.     ADMITS that the Defendant paid $594,169.76 in commission to Plaintiff under five (5) invoices in respect to the Trombetas/Aughinish COA, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 18 of the Verified Complaint.

19.     DENIES each and every allegation contained in Paragraph 19 of the Verified Complaint.

20.     DENIES each and every allegation contained in Paragraph 20 of the Verified Complaint.

**Weipa/Dneprobugskiv COA**

21.     ADMITS that the Defendant also entered into a marine Contract of Affreightment with non-party RTI (the "Weipa/Dneprobugskiv COA"), dated September 6, 2007, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 21 of the Verified Complaint.

22.     DENIES each and every allegation contained in Paragraph 22 of the Verified Complaint.

23.     DENIES each and every allegation contained in Paragraph 23 of the Verified Complaint.

24.     ADMITS     that     Defendant     did     not     pay     commissions     under     the Weipa/Dneprobugskiv COA, but except as so specifically ADMITTED, DENIES each and every allegation contained in Paragraph 24 of the Verified Complaint.

25.     DENIES each and every allegation contained in Paragraph 25 of the Verified Complaint.

26.     ADMITS the allegations contained in Paragraph 26 of the Verified Complaint.

27.     DENIES each and every allegation contained in Paragraph 27 of the Verified Complaint.

28.     ADMITS that interest, costs and attorneys' fees are routinely awarded to the prevailing party in English arbitration, but except as so specifically ADMITTED, DENIES the remaining allegations contained in Paragraph 28 of the Verified Complaint.

29.     DENIES each and every allegation contained in Paragraph 29 of the Verified Complaint.

30.     No response is required to Paragraph 30 of the Verified Complaint as there is no factual or legal allegation set forth.

## FURTHER ANSWERING THE COMPLAINT AND AS AND FOR SEPARATE PARTIAL AND OR COMPLETE DEFENSES THERETO, DEFENDANT <u>TOUTON</u> <u>ALLEGES UPON INFORMATION AND BELIEF AS FOLLOWS:</u>

31.     The Plaintiff has failed to state a cause of action in its Verified Complaint upon which relief can be granted.

32.     That the venue of this matter is improperly placed in this District.

33.     This suit should be dismissed on the basis of *forum non conveniens.*

34.     Plaintiff has improperly and/or insufficiently served process upon the Defendant NORDEN, under Rule 12(b)(4)(5) of the Federal Rules of Civil Procedure.

35.     Plaintiff is not the real party in interest with regard to the shipment in suit.

36.     That if any loss or damage was sustained by Plaintiff, which is expressly denied, said loss and/or damage was caused in whole or in part by the contributory negligence of the Plaintiff and/or its agents or others for whom Plaintiff is not responsible.

37.     Plaintiff has failed to properly and fully mitigate its damages in its Verified Complaint.

38.     The Verified Complaint fails to set forth a *prima facie* maritime claim.

39.  This matter is subject to arbitration and the matter should be dismissed or stayed in favor of arbitration at London pursuant to the agreement of the parties.

## AS AND FOR ITS COUNTERCLAIM AGAINST PLAINTIFF PANAMAX BULK DEFENDANT NORDEN ALLEGES UPON INFORMATION AND BELIEF :

40.  This counterclaim arises out of the COAs entered by NORDEN with non-party RTI which are the same transaction(s) or occurrence(s) with respect to which the action was originally filed by Plaintiff.

41.  NORDEN entered into three (3) maritime Contracts of Affreightment ("COAs") with non-party RTI, Ltd. dated September 6, 2007 and two (2) dated November 30, 2007.

42.  Plaintiff PANAMAX acted as broker on behalf of NORDEN in respect to each of the COAs.

43.  As compensation for its services, NORDEN agreed to allow PANAMAX a commission of 1.25% upon freight, detention and demurrage earned by NORDEN under the COAs.

44.  It was represented to NORDEN by PANAMAX at the time the COAs were negotiated that PANAMAX's alleged co-broker, Natica, was to also receive a commission of 1.25% upon freight, detention and demurrage earned by NORDEN under the COAs and RTI (or Rusal, RTI's parent company) was to receive a 1.25% address commission.

45.  In February 2008, NORDEN learned from RTI/Rusal that as far as they were aware, Natica was not a broker involved in these transactions and that RTI/Rusal had not received any address commission.

46.     NORDEN thereafter undertook an investigation as to whether PANAMAX had been paying commissions to Natica and RTI/Rusal beyond the 1.25% to which PANAMAX lays claim.

47.     NORDEN sent correspondence to both PANAMAX and their London lawyers, Waterson Hicks, who both refused to comment until an exchange between NORDEN's solicitors, Bentleys, Stokes and Lowless, and Waterson Hicks dated 5th and 15th September 2008, respectively.

48.     As a matter of English law, PANAMAX breached its fiduciary duties as an agent; breached its duties to make full disclosure to NORDEN as to the true nature of the broking arrangements, and breached the implied terms of good faith and fidelity which all brokers have in contracts of this nature in favor of their principals.

49.     As a result of those breaches, which go to the root of the contracts and justify NORDEN's termination of them, as a matter of English Law, the law applicable to the broking agreements, NORDEN was within its rights to refuse to pay further commissions in respect of the transactions.

50.     As a further result of PANAMAX's breaches of its duties owed to NORDEN as principal, NORDEN is entitled as a matter of English Law to the return of all commissions paid to PANAMAX to date.

51.     As a result of Plaintiff's breach of its duties owed to NORDEN as a broker, Defendant NORDEN has sustained damages for overpaid commissions in the sum of $1,657,950.76.

52.     NORDEN has demanded that Plaintiff refund the sums paid in commissions but Plaintiff has failed and otherwise refused to return said payments in further breach of its duties and obligations.

53.     Pursuant to the terms of the COAs, these counterclaims are brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for NORDEN's claims asserted in arbitration in London, England under English law as agreed between the parties.

54.     As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements and the cost of arbitration, all of which constitutes a part of the counterclaims and the amount sued for herein.

55.     NORDEN estimates, as nearly as can be computed, that the legal expenses and costs of prosecuting its claims in London arbitration will be $225,000 and interest on its damages are established to be $266,031 (calculated at the rate of 7.5% per annum compounded quarterly for a period of 2 years, the estimated time for completion of the proceedings in London).

56.     In all, the counterclaims for which NORDEN seeks, as near as may be presently estimated, total $2,148,982.00, no part of which has been paid by PANAMAX BULK, despite due demand.  NORDEN specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure NORDEN.

WHEREFORE, Defendant NORDEN prays as follows:

a.      That the Court, in accordance with the provisions of Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims and/or section 8 of the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*, direct Plaintiff PANAMAX BULK to post a bond in the usual form in the

amount of $2,148,982.00 as security to respond in damages to the claims set forth in the Counterclaims;

b.   That the Court enter judgment against Plaintiff PANAMAX BULK in the amount of any arbitration award obtained by Defendant NORDEN against Plaintiff, plus interest, costs and attorneys' fees;

c.   That such judgment, to the extent possible, be satisfied by the security posted by Plaintiff PANAMAX BULK;

d.   That a decree be entered dismissing the Verified Complaint herein; and

e.   That this Court retain jurisdiction and grant Defendant NORDEN such other, further and different relief as may be just, proper and equitable in the premises.

Dated: New York, New York
       November 5 , 2007

                          FREEHILL HOGAN & MAHAR, LLP
                          Attorneys for Defendant
                          DAMPSKIBSSELSKABET NORDEN AS

By: _____
                          Michael E. Unger (MU 0045)
                          80 Pine Street
                          New York, NY 10005
                          Tel: (212) 425-1900 / (212) 425-1901 fax

To:   LENNON MURPHY & LENNON, LLC
      Counsel for Plaintiff
      420 Lexington Avenue, Suite 300
      New York, New York 10170
      Tel: (212) 490-6050
      Fax: (212) 490-6070
      Attn:   Patrick F. Lennon
      *pfl@lenmur.com*

NYDOCS1/316199.1

# Exhibit B

*Unger Affirmation*

622-08/MEU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

PANAMAX BULK AS,

                       Plaintiff,

     -against-

DAMPSKIBSSELSKABET NORDEN AS,

                      Defendant.
-----------------------------------------------------x

                     **08 CIV 8601 (JSR)**

                     **CLERK'S CERTIFICATE**
                     <u>**OF DEFAULT**</u>

     I, J. Michael McMahon, Clerk of the United States District Court, Southern District of New York, do hereby certify that I have reviewed the docket entries in this case and I confirm that the docket reflects that Defendant DAMPSKIBSSELSKABET NORDEN AS filed a Counterclaim against Plaintiff PANAMAX BULK AS on November 6, 2008, and that Plaintiff was served with a copy of same via counsel through the ECF system at the time of filing. The docket also reflects that Plaintiff has not filed an Answer to the Counterclaim or otherwise moved with respect to the Counterclaim filed herein and the time within which to do so has passed. The default of Plaintiff PANAMAX BULK AS pursuant to Federal Rule of Civil Procedure 55(a) and Local Civil Rule 55.1 is hereby noted.

Dated: New York, New York
       April ___, 2010

                               *J. Michael McMahon*
                             _____
                             J. MICHAEL MCMAHON
                             Clerk of the United States District Court
                             Southern District of New York