622-08/MEU

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PANAMAX BULK AS,

                               Plaintiff,

    - against -

DAMPSKIBSSELSKABET NORDEN AS,

                               Defendant.
------------------------------------------------------------------x

08-CV-8601 (JSR)

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION
## FOR JUDGMENT ON COUNTER-CLAIM

FREEHILL HOGAN & MAHAR LLP
Attorneys for Defendant
DAMPSKIBSSELSKABET NORDEN AS
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 fax

Of Counsel:
Michael E. Unger
Lawrence J. Kahn
Eric J. Matheson

351519.2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .........................................................................................................................1

ARGUMENT ...............................................................................................................................2

    POINT I

    THIS APPLICATION IS PROPERLY FILED .................................................................2

    POINT II

        THIS COURT MAY ENTER JUDGMENT
        IN FAVOR OF NORDEN ON THE COUNTERCLAIM ................................................3

    POINT III

        RECONSIDERATION UNDER RULE 60 SHOULD RESULT
        IN JUDGMENT ON THE COUNTERCLAIM IN FAVOR OF NORDEN ....................7

CONCLUSION ..........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006) .................................. 3, 4

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 106 (2d Cir. 1998) ........................ 4

*Auto Services Co., Inc. v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008) ................................... 2

*Bass v. U.S. Dept. of Ag.*, 211 F.3d 959, 962 (5th Cir. 2000) ...................................................... 2

*Carrascosa v. McGuire*, 520 F.3d 249, 253 n.3 (3d Cir. 2008) .................................................... 3

*In re Cendant Corp. Securities Litig.*, 454 F.3d 235, 243 (3d Cir. 2006) ....................................... 3

*Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A.*, 2007 U.S. Dist. LEXIS 18827, *5 (S.D.N.Y. Feb. 26, 2007) .................................................................................. 4

*Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002) .............................................................................................................................. 2

*DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) .................................. 5

*Greenwich Marine, Inc. v. S.S. ALEXANDRA*, 339 F.2d 901 (2d Cir. 1965) ................................ 5

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 496 F.3d 863, 868 (8th Cir. 2007) ........................................................................................................... 7

*Jackson v. Albany Appeal Bureau Unit*, 442 F.3d 51, 53 n.1 (2d Cir. 2006) .................................. 4

*Kanematsu-Gosho, Ltd. v. M/T MESSINIAKI AIGLI*, 805 F.2d 47, 48-49 (2d Cir. 1986) (*per curiam*) ............................................................................................................................. 4

*Kolman v. Shalala*, 39 F.3d 173, 176 (7th Cir. 1994) ................................................................... 4

*LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 224 (3d Cir. 2007) ........................................................................................................................... 4

*Montauk Oil Transp. Corp. v. Sonat Marine, Inc.*, 871 F.2d 1169, 1172 (2d Cir. 1989) ........................................................................................................................... 4, 5

*Negron-Almeda v. Santiago*, 528 F.3d 15, 20 (1st Cir. 2008) ...................................................... 2

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 587 F.Supp.2d 548, 571 (S.D.N.Y. 2008) ........................................................................................................... 5

*Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 363 (2d Cir. 2003) ......................................... 3

*Starboard Venture Shipping, Inc. v. Casinomar Transp. Inc.,*, 1993 U.S. Dist. LEXIS 15891, *14 (S.D.N.Y. Nov. 9, 1993) ............................................................................. 4

*Texas A&M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003) ....................................................................................................................... 4

*The Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009) ............................................................................................................... *passim*

*U.S. v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1098 (9th Cir. 2008) .......................... 3

## Other Authorities

9 U.S.C. §201 ............................................................................................................................. 6, 8

28 U.S.C. §1331 ............................................................................................................................ 8

28 U.S.C. §1333 ............................................................................................................................ 8

Rule 54 .......................................................................................................................................... 5

Rule 56 .......................................................................................................................................... 6

Rule 58 ................................................................................................................................... 1, 3, 4

Rule 59 .......................................................................................................................................... 2

Rule 60 ....................................................................................................................... 1, 2, 5, 7, 8, 9

Rule 79 ....................................................................................................................................... 1, 4

Rule B ........................................................................................................................................... 8

Rule E .................................................................................................................................... 5, 8, 9

Local Rule 6.3 .............................................................................................................................. 2

Local Rule 56.1 ............................................................................................................................ 6

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is respectfully submitted on behalf of Defendant NORDEN in further support of its application for Judgment on its Counterclaim against Plaintiff PANAMAX. For the reasons set forth herein, NORDEN's application should be granted.

## BACKGROUND

The relevant background facts are set forth in the moving papers. Certain additional matters set forth in PANAMAX's response and Siegel Declaration as "facts" are inaccurate and corrected in the accompanying Unger Reply Affirmation and Radzik Reply Affirmation. Additional facts concerning PANAMAX's recent application for leave to appeal before the English High Court are set forth in the Griffiths Reply Declaration.

PANAMAX incorrectly argues that NORDEN failed to timely appeal or move for reconsideration. This is incorrect because a Final Judgment, set forth as a separate document under Rule 58, has not yet been entered on the docket by the Clerk pursuant to Rule 79, and so the time within which to take an appeal has not yet begun to run. Moreover, the instant motion, brought *inter alia* for reconsideration under Rule 60, is timely as motions brought pursuant to Rule 60(b)(6) must only be brought within a "reasonable" period of time following entry of judgment. PANAMAX also attempts to make much of NORDEN's refusal to consent to its offer to withdraw the appeal. PANAMAX's motivation in offering to withdraw the appeal should be seen for what it is: PANAMAX did not succeed in the underlying arbitration and thus its appeal will provide it no benefit as PANAMAX cannot now win on the merits. PANAMAX also hopes that by withdrawing from this litigation (which it commenced) it will be able to avoid the exercise of personal jurisdiction over it (and thereby avoid enforcement of the award under the New York Convention). The arbitral panel found, in essence, that PANAMAX had defrauded NORDEN. PANAMAX's current strategy of raising a pointless appeal in England and

attempting to avoid personal jurisdiction here so as to deprive NORDEN of the ability to obtain Judgment on the Award should not as a matter of equity be countenanced by this Court.

This case is one in which a unique and peculiar situation has developed. The basis for the Court's dismissal of the action in October on the heels of *Jaldhi* is unclear as is the question of whether the Court intended to dismiss the entire action or just the Plaintiff's main case. To the extent that the Court intended to dismiss the entire action, then NORDEN's rights were preserved by PANAMAX's appeal – with which NORDEN agreed (insofar as the dismissal of the entire action was concerned). To the extent that the Court intended only to dismiss PANAMAX's main claim, then NORDEN's Counterclaim survives and is now ripe for a ruling in its favor on either of the bases set forth in NORDEN's moving brief – default or summary judgment. Even if the Counterclaim was dismissed, though, NORDEN's motion under Rule 60 is properly made and supported and calls for adjudication in its favor.

## ARGUMENT

### POINT I:  THIS APPLICATION IS PROPERLY FILED

PANAMAX's first several responsive arguments are specious. During the April 26, 2010 conference call with the Court, the Court indicated that NORDEN should file its challenge in the form of a motion for reconsideration. Motions for reconsideration may be filed within 28 days following the ruling under Rule 59 (clearly not applicable here)[1] or after such time pursuant to Rule 60.[2] PANAMAX's argument that NORDEN's motion should be denied on the basis of

---

[1] PANAMAX's brief refers to a 10-day period under Rule 59 and Local Rule 6.3. The time has since been amended to 28 days.

[2] The Federal Rules do not expressly recognize motions for "reconsideration" – such motions are brought either under Rule 59(e) or Rule 60(b). *Auto Services Co., Inc. v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008); *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002); *Bass v. U.S. Dept. of Ag.*, 211 F.3d 959, 962 (5th Cir. 2000). It is generally held that if filed within the shorter period, the motion will be resolved under Rule 59, but afterwards under Rule 60. *Negron-Almeda v. Santiago*, 528 F.3d 15, 20 (1st Cir. 2008);

an improper filing (Point I of its argument) is plainly incorrect, and its arguments concerning the 14-day timing issue (Point II of its argument) are likewise wrong as they are rooted in Rule 59 as well as the absurd assumption that the Court directed NORDEN to file a motion beyond a deadline which by Rule the Court cannot extend.

PANAMAX also attempts to argue that NORDEN had previously moved the Court to dismiss PANAMAX's case and/or sought the dismissal of the entire action, none of which is true, regardless of how many times PANAMAX repeats this in its brief. While NORDEN saw no need to defend the maintenance of PANAMAX's main claim against it before this Court, and was not displeased to see PANAMAX's claim dismissed, at no time did NORDEN ever seek or consent to dismissal of the entire action. NORDEN's actions have at all times sought to preserve its rights to enforce an arbitral award in its favor against PANAMAX as per the Counterclaim.

### POINT II:  THIS COURT MAY ENTER JUDGMENT IN FAVOR OF NORDEN ON THE COUNTERCLAIM

Rule 58 provides that a judgment must be set forth on a separate document. It has been held that Rule 58 mandates an extraordinarily austere approach to drafting judgments: the body of the proper judgment should state the relief granted and little else. *In re Cendant Corp. Securities Litig.*, 454 F.3d 235, 243 (3d Cir. 2006). Except for the five exempted instances set out in the Rule's text (none of which are applicable here), every judgment must be labeled "judgment" and must be set forth on a separate document. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 363 (2d Cir. 2003). Judicial memoranda and opinions do not qualify (*see Id.* at 363). Judgments encumbered with extraneous text, such as legal reasoning, fail to meet the separateness requirement. *Cendant*, 454 F.3d at 243. To qualify as a separate document, the

---

*Carrascosa v. McGuire*, 520 F.3d 249, 253 n.3 (3d Cir. 2008); *U.S. v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1098 (9th Cir. 2008); *Allender v. Raytheon Aircraft Co.*, 439 F.3d

judgment must (1) be a self-contained, separate document, (2) state the relief granted, and (3) omit the reasoning used by the district court to dispose of pending motions. *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 224 (3d Cir. 2007). A document that is more properly an "Order", setting forth reasons for the Court's decision, does not qualify as a judgment. *Kanematsu-Gosho, Ltd. v. M/T MESSINIAKI AIGLI*, 805 F.2d 47, 48-49 (2d Cir. 1986) (*per curiam*). The Court's "Order and Judgment" of October 19, 2009 does not meet the requirements of Rule 58, and NORDEN is entitled to wait to appeal until a separate final judgment is issued pursuant to Rule 58 and entered by the Clerk pursuant to Rule 79. *Kolman v. Shalala*, 39 F.3d 173, 176 (7th Cir. 1994); *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 106 (2d Cir. 1998). Judgments are not effective until entered on the docket. *Jackson v. Albany Appeal Bureau Unit*, 442 F.3d 51, 53 n.1 (2d Cir. 2006). Since no separate final judgment has been entered on the docket in conformity with Rules 58 and 79, then this case, and by necessity NORDEN's Counterclaim, remains active and before this Court, and may now properly be adjudicated.

Even had the October 19, 2009 Order and Judgment met the requirements of Rules 58 and 79, this Court is free, in the interest of justice and equity, to clarify what it intended when it entered that Order. It has regularly been held that admiralty Courts are courts of "purest equity." *Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A.*, 2007 U.S. Dist. LEXIS 18827, *5 (S.D.N.Y. Feb. 26, 2007) (quoting *Starboard Venture Shipping, Inc. v. Casinomar Transp. Inc.,*, 1993 U.S. Dist. LEXIS 15891, *14 (S.D.N.Y. Nov. 9, 1993). Courts sitting in admiralty are to be guided by principles of equity and, in doing so, exercise their equitable powers to avoid injustice. *See Montauk Oil Transp. Corp. v. Sonat Marine, Inc.*, 871 F.2d 1169, 1172 (2d Cir.

---

1236, 1242 (10th Cir. 2006); *Texas A&M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003).

1989); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 587 F.Supp.2d 548, 571 (S.D.N.Y. 2008) (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998)). "Fundamentally, the objective of admiralty law is to do substantial justice between the parties." *Id.* at 24. *See also Greenwich Marine, Inc. v. S.S. ALEXANDRA*, 339 F.2d 901 (2d Cir. 1965).

In particular, this Court is empowered to determine, to the extent it meant to dismiss the entire action in its October Order, that its decision to dismiss the Counterclaim was incorrect. This Court accordingly can amend the Judgment and restore the Counterclaim to the active docket for adjudication. PANAMAX would not be prejudiced by any such decision. Alternatively, the Court is free to determine that the dismissal of the action was with regard only to the Plaintiff's main case, and did not dismiss the Defendant's Counterclaim.[3] Certainly nothing in *Jaldhi* required the dismissal of NORDEN's Counterclaim.[4] If the Court declines to proceed along the lines of either of these alternatives, then, NORDEN submits, Judgment on the Counterclaim may still be entered in favor of NORDEN in keeping with NORDEN's Rule 60 application herein, further support for which is found below at Point III.

If this Court chooses either of these options, then it is free to consider NORDEN's application for Judgment on the Counterclaim by default. The Counterclaim was filed by NORDEN in November 2008. While PANAMAX argues that the October 19, 2009 Order prevented it from filing any responsive pleading, it provides no explanation whatever as to why it

---

[3] Indeed, Rule 54(b) indicates that to the extent that the Court did not adjudicate NORDEN's Counterclaim, the action is not ended: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilies."

[4] NORDEN agrees that to the extent *Jaldhi* required the vacature of the attachment in this action, then NORDEN's application for counter-security could not survive as no security would have been "given", a pre-requisite under Rule E(7).

351519.2                        5

failed to answer the Counterclaim between November 2008 and October 2009. Certainly a full calendar year provided PANAMAX sufficient time for it to investigate the allegations of the Counterclaim (which tracked the Counterclaim in the London arbitral proceedings in which both parties were participating) and form a response, yet PANAMAX never responded to the pleading. At no time did PANAMAX request (nor was it granted) additional time to respond to the Counterclaim in this action. Thus, the basis for PANAMAX's denial of paragraph 7 of the Rule 56.1 Statement is not understood, particularly as PANAMAX fails to comply with the requirement of Rule 56.1(d) to cite to any evidence (or indeed anything at all) controverting NORDEN's Rule 56.1(a) statement in this regard. Additionally, PANAMAX has not raised (nor can it raise in good faith) any defense on the merits to the Counterclaim.

PANAMAX argues that judgment by default is inappropriate when the merits are being decided by an arbitral proceeding which remains pending. This contention is irrelevant as the underlying arbitral proceeding has now concluded in favor of NORDEN. Accordingly, the Court – if it deems NORDEN's Counterclaim still active in this case – is free to grant Judgment by default in favor of NORDEN and against PANAMAX on the Counterclaim.

As an alternative to Judgment on the Counterclaim by default, this Court may enter Judgment on the Counterclaim based on NORDEN's Rule 56 motion, which follows the form set forth in the New York Convention for the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §201 *et seq.* The New York Convention requires Courts in enforcing countries to give recognition to foreign arbitral awards when the moving party provides a certified copy of the agreement to arbitrate and resulting arbitral award. NORDEN's application herein is in compliance. Non-recognition can only occur if the non-moving party can establish one of the few grounds available for non-recognition set forth in the Convention itself. Here, PANAMAX asserts that this Court should not recognize the award because it is currently seeking leave to

351519.2                                                         6

appeal the award in the English High Court. PANAMAX, though, has not met the conditions for establishing an appeal before that Court. The appeal is not meritorious and is nothing more than a delaying tactic by PANAMAX. It is fully anticipated that the request to appeal will soon be denied. Griffiths Reply Declaration, ¶5-17. To the extent that PANAMAX's appeal of the arbitral award is temporarily a barrier to recognition and enforcement, then this Court should simply stay (rather than deny) this application pending the result of the English appeal. Any denial of the instant motion would of necessity be on a without prejudice basis, which would only result in NORDEN filing the very same application again in short order once PANAMAX's appeal is resolved, wasting judicial resources.

### POINT III: RECONSIDERATION UNDER RULE 60 SHOULD RESULT IN JUDGMENT ON THE COUNTERCLAIM IN FAVOR OF NORDEN

To the extent that the Court determines that its October 19, 2009 Order was meant as a final disposition of the action (as PANAMAX now urges), then NORDEN moves for reconsideration pursuant to Rule 60(b)(6). Rule 60(b)(6) provides that relief may be had from a final judgment in the interests of justice. While admittedly relief under this Rule is "exceedingly rare,"[5] the purpose of establishing a legal test is not to set the bar so high that the standard can never be achieved. If this was the purpose, then the rule would be far more clear and would provide that the relief cannot be had at all. The very existence of a legal test implies that the standard can be achieved in a proper case. NORDEN submits that this case represents a unique and exceptional situation in which this requested relief should be granted in the interest of justice. The only opposition offered on this point by PANAMAX is its suggestion that this case is not extraordinary.

---

[5] *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 496 F.3d 863, 868 (8th Cir. 2007).

351519.2                                             7

NORDEN submits that the following demonstrates that extraordinary circumstances do exist in this case and that reconsideration under Rule 60 should be granted. PANAMAX brought this action in 2008 for the dual purpose of obtaining security for its arbitral proceedings against NORDEN in London and for eventual entry of the award it hoped to obtain as a New York Judgment against NORDEN based on the New York Convention. PANAMAX succeeded in restraining approximately $9 million in funds in which NORDEN had an interest. Pursuant to Rule E(5) NORDEN provided the full amount of security sought – some $12 million – to be held by the Court in its CRIS account pending the result of the arbitration. NORDEN also joined issue in this case by answering the Complaint and by filing a Counterclaim in November 2008. The Counterclaim sought not only counter-security (which was resisted by PANAMAX), but also sought entry of a New York Judgment against PANAMAX on the award that NORDEN hoped to obtain based on its Counterclaim in the very same arbitral proceedings. The *Jaldhi* decision was issued on Friday October 16, 2009, and the following Monday, the Court issued a *sua sponte* Order vacating the attachment (which mooted the application for counter-security) and dismissing the action. While this Court was hardly alone in issuing Rule B vacatur orders soon after publication of *Jaldhi*, and while arguably *Jaldhi* empowered this Court to issue such an order of vacature, it is entirely unclear on what basis this Court dismissed the instant action: subject matter jurisdiction existed because the matter was maritime in nature (28 U.S.C. §1333) and was also subject to the New York Convention (9 U.S.C. §201 and 28 U.S.C. §1331), and personal jurisdiction existed because both sides voluntarily appeared and subjected themselves to the Court's jurisdiction via their filed pleadings. Both sides sought relief in keeping with federal law – recognition and enforcement of an arbitral award – which this Court was empowered to grant. No basis for the dismissal of the Counterclaim was set forth in the Order, and it appears none exists. PANAMAX appealed the vacature and the dismissal of the action. Had briefing

been advanced, NORDEN would have joined in appealing the dismissal of the action insofar as the Counterclaim was dismissed. The facts, though, have now overtaken the case, as an arbitral award in NORDEN's favor has now been issued which essentially finds that PANAMAX had engaged in fraud and owes NORDEN a substantial sum which it has not paid and which it has not secured. PANAMAX now attempts to take advantage of this peculiar situation – in which it was Ordered by this Court (in connection with obtaining a stay of the release of NORDEN's funds) to brief the appeal on an expedited schedule, but refused or otherwise failed to do so, and now seeks to withdraw from the appeal so as to prevent NORDEN from arguing in the appeal that the dismissal (to the extent it was intended to dismiss the Counterclaim) was improper. PANAMAX also hopes to circumvent the effect of its own voluntary invocation of the District Court's authority (by filing suit) by dropping out of this litigation. If allowed, the effect would be – as PANAMAX admitted in the pre-motion telephone conference with the Court – the avoidance of the personal jurisdiction which presently exists, thereby preventing NORDEN from obtaining Judgment against it here in any separately filed "related" case based on the matters alleged in its properly filed Counterclaim herein. Where, as here, PANAMAX engaged in fraudulent behavior, commenced an arbitration to try to win $12 million more from NORDEN, then succeeded in restraining the full $12 million (which was held for approximately 2 years) but resisted NORDEN's proper request under Rule E for counter-security, and now – because it has lost in the arbitration – seeks to capitalize on the unclear nature of the Court's dismissal order, extraordinary circumstances do exist that justify relief under Rule 60(b)(6).[6]

---

[6] PANAMAX also argues that NORDEN supported dismissal of the entire action and so should not now be heard to argue that the Counterclaim survives or should be revived (if it did not survive the October 19, 2009 Order). Nothing in the record supports PANAMAX's position in this regard. Following *Jaldhi*, due to positional conflict, this firm was required to withdraw from the action. Substitute counsel immediately took steps to try to preserve NORDEN's Counterclaim and never advocated for the dismissal of the entire action. *See* Radzik Reply

351519.2                                         9

## CONCLUSION

For all the foregoing reasons, and for those set forth in the initial moving papers, NORDEN should be granted judgment in its favor and against PANAMAX on its Counterclaim, and interest, costs and attorneys fees should also be adjudged in favor of NORDEN, and the Court should grant such other, further and different relief as the Court may deem just and proper in the premises.

Dated: New York, New York
       May 21, 2010

Respectfully submitted,

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
Dampskibsselskabet Norden AS

By: _____
Michael E. Unger
Lawrence J. Kahn
Eric J. Matheson
80 Pine Street
New York, NY  10005
(212) 425-1900/(212) 425-1901 fax

---

Affirmation. Substituted Counsel made efforts to ensure that NORDEN's rights under its Counterclaim would be preserved. Immediately upon the evaporation of the positional conflict, undersigned counsel was re-substituted into the case and within hours set about efforts to act on the Counterclaim. NORDEN's efforts were never aimed at dismissal of the entire action and were always prompt in attempting to secure its rights to have the arbitral award against PANAMAX recognized and enforced as a New York Judgment.

351519.2                          10